UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MIA HAGGERTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-04454-JRS-MPB |
| | ) |
| ST. VINCENT CARMEL HOSPITAL, | ) |
| | ) |
| Defendant. | ) |

**Order on Motion for Summary Judgment (ECF No. 29)**

This case arises out of an employment relationship between Plaintiff Mia Haggerty and Defendant St. Vincent Carmel Hospital ("St. Vincent"). Haggerty is a former employee of St. Vincent. She alleges that her employment was terminated because of her race (African American), disability (diabetes), and/or because she took leave covered under the Family and Medical Leave Act ("FMLA"). Haggerty brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 1981, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* St. Vincent seeks summary judgment, arguing that the evidence does not permit a reasonable inference that Haggerty's termination was discriminatory or retaliatory. St. Vincent has presented evidence that she was terminated based on a substantiated patient complaint that Haggerty had verbally and physically abused the patient. Haggerty maintains that this stated reason is pretextual. For the reasons that follow, the Court finds that St. Vincent's motion should be granted.

## I. Factual Background

Haggerty was employed by St. Vincent as a Patient Care Technician. (ECF No. 30-1 at 3.) Her duties included taking patients' vitals; assisting them with walking; sitting with them as needed; and documenting their vitals, moods, and activities. (ECF No. 30-1 at 3.) Beginning in 2013 or 2014 and continuing through the end of Haggerty's employment with St. Vincent's on August 31, 2016, her supervisor was Paulette Allanson, Clinical Director of Medical/Surgery and Orthopedics. (ECF No. 30-1 at 4; ECF No. 30-2, ¶¶ 3-4.)

Haggerty was diagnosed with Type II diabetes in 2008, and in 2016 she was hospitalized for ketoacidosis, a condition that can be related to diabetes. (ECF No. 30-1 at 6.) Following her hospitalization, Haggerty was off work for about one month. (ECF No. 30-1 at 5–6.) While in the hospital, Haggerty called Allanson, told her she had ketoacidosis, and requested Allanson to ask for paperwork on Haggerty's behalf. (ECF No. 30-1 at 8.) Allanson expressed no concern about Haggerty missing work. (ECF No. 30-1 at 8.) Haggerty's request for about one month of FMLA leave was approved. (ECF No. 30-1 at 8.) When Haggerty returned to work from FMLA leave, she requested intermittent FMLA leave for absences due to her diabetes. (ECF No. 30-1 at 9.) She did not, however, take any more FMLA leave. (ECF No. 30-1 at 9.)

A few months later, on August 11, 2016, Haggerty was assigned to be an overnight "safety sitter" for a patient who had just had surgery. (ECF No. 30-1 at 10.) "Safety sitters" are assigned to patients who need around-the-clock care. (ECF No. 30-2, ¶ 6.) That night, Haggerty overheard the patient complain to Heather Surface, the

Registered Nurse on duty, that Haggerty had pushed the patient down and was being rude to her. (ECF No. 30-1 at 13.)

A few days later, Rebecca Helms, the House Supervisor, interviewed the complaining patient. (ECF No. 30-2, ¶ 5; ECF No. 30-2 at 7.) The patient reported that Haggerty was rough with her and "threw her back into bed" when she needed to get up to use the restroom. (ECF No. 30-2 at 7.) The patient also said that she was "scared" of Haggerty after that happened, and she did not want to make a complaint until after Haggerty had left. (ECF No. 30-2 at 8.)

Tammy Railsback, the Clinical Supervisor, also interviewed the complaining patient. (ECF No. 30-2 at 11.) The patient told Railsback that Haggerty was rough; yelled, "I told you to stay in bed"; and at one point "slammed [her] into the bed". (ECF No. 30-2 at 11.) The patient also reported that the nurse had to tell Haggerty to leave the room and calm down, and another Patient Care Technician stayed with her the rest of the night. The patient said she was "scared to death". (ECF No. 30-2 at 11.)

Both Nelms and Railsback reported the patient's complaints about Haggerty to Haggerty's supervisor Allanson who investigated by interviewing Surface. (ECF No. 30-2 at 2–3.) Surface reported that Haggerty had been angry from the beginning of her shift and that Surface had heard arguing and loud voices from the room twice that night. Surface also said that at one point, Haggerty had asked her to "give the patient something," which Surface understood to mean that Haggerty wanted to give the patient medication that was inappropriate. (ECF No. 30-2 at 3.) Surface asked another Patient Care Technician to sit with the patient for the rest

3

of the night, and there were no further incidences with the patient. (ECF No. 30-2 at 3.)

Allanson concluded that Surface had substantiated the patient's complaint. (ECF No. 30-2 at 3.) Under St. Vincent's Corrective Action Procedure, the "verbal or physical abuse of [a] patient" is considered sufficiently serious that it may result in immediate dismissal. (ECF No. 30-2 at 3, 21–22.) Because of the seriousness of Haggerty's misconduct, which included slamming a patient into her bed and yelling at her to the point that she was "scared to death," Allanson decided that Haggerty's employment should be terminated under St. Vincent's policy. (ECF No. 30-2 at 3.) Allanson informed Haggerty that her employment was terminated on August 31, 2016. (ECF No. 30-2 at 3.)

## II. Discussion

Haggerty brings claims under Title VII, § 1981, the ADA, and the FMLA, alleging that her employment was terminated because of her race, disability, and/or because she took FMLA leave. St. Vincent seeks summary judgment on the ground that the evidence does not permit a reasonable inference that Haggerty's termination was discriminatory or retaliatory. St. Vincent further argues that Haggerty was terminated based on a substantiated patient complaint that she had verbally and physically abused the patient. Haggerty opposes the summary judgment motion, contending that the proffered reason for her termination was a pretext for discrimination.

### A. Summary Judgment Standard

"A district court properly grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a

4

matter of law." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019), *petition for cert. filed*, (U.S. June 3, 2019). A court must draw all reasonable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-movant fails to establish an essential element of his case, there is a complete failure of proof, and the movant is entitled to judgment as a matter of law. *Id.* at 323. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Giles,* 914 F.3d at 1048 (stating that the non-movant must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture"). Where the "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50 (citations omitted).

### B. Title VII and § 1981 Race Discrimination

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 also prohibits race discrimination in employment. 42 U.S.C. §1981(a). The same substantive standards and methods of proof that apply to race discrimination claims under Title VII also apply to such claims under 42 U.S.C.

5

§1981. *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016). In an employment discrimination or retaliation case, a plaintiff's claims survive summary judgment where the evidence permits "a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). When ruling on a summary judgment motion in an employment discrimination or retaliation case, courts must consider the evidence as a whole. *See id.*

Nonetheless, the *McDonnell Douglas* framework for analyzing discrimination, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894–95 (7th Cir. 2018). Under *McDonnell Douglas*, a plaintiff must show that: (1) she is a member of a protected class; (2) she performed reasonably on the job in accord with her employer's legitimate expectations; (3) she was subjected to an adverse employment action despite her reasonable performance; and (4) the employer treated similarly situated employees outside of the protected class more favorably. *Id.* If the plaintiff makes this *prima facie* showing, then the burden shifts to the employer to present a legitimate, non-discriminatory reason for the challenged employment action. *See McDonnell Douglas*, 411 U.S. at 802; *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018). If the employer offers such a reason, the burden reverts to the plaintiff to show pretext, "or at least to produce evidence establishing a genuine factual dispute about pretext to defeat summary judgment." *Barbera*, 906 F.3d at 629.

6

St. Vincent argues that Haggerty has no direct evidence of discrimination and instead attempts to rely on comparator evidence to raise an inference of discrimination. That Haggerty is a member of a protected class based on her race (African American) and that the termination of her employment constitutes an adverse employment action are undisputed. In response, Haggerty offers no direct evidence of discrimination, such as an admission by St. Vincent. Instead, she attempts to prove her case by identifying three purported similarly situated comparators.

"[A]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them." *Barbera,* 906 F.3d at 629 (quoting *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017)). When the plaintiff has been accused of misconduct, she must identify "a similarly situated employee who was accused of similar misconduct but was treated more leniently." *See Smith v. Chi. Trans. Auth.*, 806 F.3d 900, 907 (7th Cir. 2015); *see also Coleman v. Donahoe,* 667 F.3d 835, 850 (7th Cir. 2012) (applying a "comparable seriousness" standard). The Seventh Circuit has explained: "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The 'similarly situated' prong establishes whether all things are in fact equal." *Coleman,* 667 F.3d at 846 (quoting *Filar v. Bd. of Educ. of City of Chi.,* 526 F.3d 1054, 1061 (7th Cir. 2008)). The purpose of the similarly situated requirement "is to eliminate other possible explanatory variables, 'such as differing

roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Id.* (quoting *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008)). "'Similarly situated employees must be directly comparable to the plaintiff in all material respects,' yet this is a flexible inquiry with no magic formula." *Barbera,* 906 F.3d at 629 (quoting *Khowaja v. Sessions,* 893 F.3d 1010, 1015 (7th Cir. 2018)). Whether an employee is similarly situated is usually a question of fact, but summary judgment is appropriate "when no reasonable fact-finder could find that plaintiff[] ha[s] met [her] burden on the issue." *Id.* (quoting *Coleman,* 667 F.3d at 846–47).

Haggerty identifies three comparators: (1) a Patient Care Technician named Joe who was sneaking out of work and leaving early, but was not terminated; (2) an unidentified white Patient Care Technician who, when asked by a bariatric patient to hand her a blanket, responded that if the blanket were a doughnut, she would have been able to reach it herself; and (3) Leah Johnson, a white nurse who was off work with a disability and was allowed to do her competencies online and/or off the clock, whereas Haggerty was not allowed to complete her competencies and was not given credit for them. There are several problems with Haggerty's evidence of comparators.

Starting with Joe, Haggerty admitted that she has no personal knowledge that he engaged in the alleged misconduct; she simply overheard other employees talking about him leaving work. Thus, her testimony about Joe leaving work early is based on hearsay. Inadmissible hearsay cannot be used to defeat a summary judgment motion. *See, e.g., Aguilar v. Gaston-Camara,* 861 F.3d 626, 631 (7th Cir. 2017).

Second, the evidence is that Haggerty and Joe did not have the same supervisor: Joe's supervisor was Kim Hogan; Haggerty's was Allanson. (ECF No. 30-1 at 17.) Haggerty argues that Hogan and Allanson "held the same position" as they were both supervisors for the unit on which she worked. But the purpose of the similarly-situated prong "is to eliminate other possible explanatory variables" and raise an inference of discrimination. *See Coleman,* 667 F.3d at 846. Because "[d]ifferent decisionmakers may rely on different factors when deciding whether, and how severely, to discipline an employee," *Ellis v. UPS, Inc.,* 523 F.3d 823, 826 (7th Cir. 2008), pointing to an employee with a different supervisor who was dealt with less severely, as Haggerty does here, does not raise an inference of discrimination. Furthermore, Joe's transgression at work was leaving early, whereas Haggerty was accused of verbal and physical abuse of a patient. No reasonable fact-finder could find that Joe and Haggerty engaged in similar misconduct. Therefore, the Court finds that Joe is not a sufficient comparator. *See, e.g., Barbera,* 906 F.3d at 629.

The white Patient Care Technician who allegedly made the doughnut comment to a patient is not a sufficient comparator either. As with Joe, Haggerty relies on inadmissible hearsay (*see* ECF No. 30-1 at 16–17 (saying Haggerty learned of this incident because the technician and nurses were joking and laughing about it)), which cannot be used to defeat summary judgment, *Aguilar,* 861 F.3d at 631. The technician also had a supervisor different from Haggerty's (ECF No. 30-1 at 17 (stating that the technician's supervisors at the time of the doughnut comment were Marla Rybolt and Kim Hogan). *See Barbera,* 906 F.3d at 629 (stating, *inter alia*, that similarly situated

9

employees "deal with the same supervisor"). Further, despite Haggerty's assertion that abuse is abuse, whether it is verbal or physical, the technician's purported retort to the patient, though mean and insensitive, cannot reasonably be viewed to be as severe as yelling at a patient and slamming the patient into bed, rendering the patient "scared to death" and requiring the nurse to dismiss Haggerty from the room and to assign another Patient Care Technician to the patient. *See id.* (noting similarly situated employees "have engaged in similar conduct"). The white Patient Care Technician is not sufficiently similar to Haggerty.

That leaves Johnson who had been off work with a disability and was allowed to complete her competencies (essentially patient charting) online. Haggerty has not identified any alleged misconduct by Johnson. Even assuming that the alleged "misconduct" was failing to complete her competencies, no reasonable factfinder could find that as serious as patient abuse. Haggerty has identified three alleged comparators, but none of them are sufficiently similar to Haggerty. Therefore, for at least this reason, the Court finds that Haggerty has not presented sufficient evidence to demonstrate a *prima facie* case of discrimination. Notably, another failed prong in her attempt to make a *prima facie* showing of race discrimination lies in the realization that verbal and patient abuse constitutes at least poor rather than reasonable job performance.

But even if Haggerty had raised a genuine issue as to a *prima facie* case of discrimination, St. Vincent's has offered a legitimate, nondiscriminatory reason for terminating her employment: A patient complained that Haggerty yelled at her and

slammed her into bed. Haggerty's supervisor Allanson investigated, and the patient's complaint was corroborated by Surface, the RN on duty at the time of the alleged abuse. Allanson stated that she made the decision to terminate Haggerty's employment because of the seriousness of her misconduct—slamming a patient into her bed and yelling at her to the point that the patient was "scared to death"—and based on St. Vincent's Corrective Action Procedure, which makes the verbal and physical abuse of a patient a terminable offense. (*See* [ECF No. 30-2 at 3](#), ¶¶ 8, 9.)

Because St. Vincent has come forward with a legitimate, nondiscriminatory reason for terminating Haggerty's employment—Haggerty's verbal and physical abuse of a patient—Haggerty must present evidence to raise a genuine issue of material fact as to pretext. "Pretext requires more than showing that the decision was mistaken, ill-considered or foolish, and so long as the employer honestly believes [its stated] reasons, pretext has not been shown." *[Formella v. Brennan,](#)* [817 F.3d 503, 513 (7th Cir. 2016)](#) (citation and quotation omitted). Pretext is "[a] lie, specifically a phony reason for some action." *[Riley v. City of Kokomo](#)*, [909 F.3d 182, 189 (7th Cir. 2018)](#) (alteration in original) (quoting *[Harden v. Marion Cty. Sheriff's Dep't,](#)* [799 F.3d 857, 864 (7th Cir. 2015)](#)).

Haggerty denies that she verbally or physically abused the patient, but she admits to having heard the patient complain that Haggerty "had pushed her down and all kinds of stuff." ([ECF No. 30-1 at 13](#).) But the question is not whether St. Vincent's decision to terminate Haggerty's employment was foolish or mistaken. The question is whether St. Vincent "honestly believes" in the reason it has proffered for

11

terminating her employment. Haggerty asserts she has evidence that the proffered reason was not honestly believed. First, she points to evidence that Surface heard arguing and loud voices from the patient's room the night of the alleged patient abuse, and Haggerty asked Surface to "give the patient something." Since St. Vincent's procedure identifies "ignoring" as nonverbal patient abuse, this evidence, according to Haggerty, raises questions as to whether St. Vincent enforced its Procedure in a non-discriminatory manner. Haggerty asserts that despite hearing arguing and loud voices from the patient's room, Surface "does nothing." ([ECF No. 33 at 10](#).) This assertion is not supported in the record, however. To the contrary, the unrefuted evidence is that Surface removed Haggerty from the patient's care and asked another Patient Care Technician to sit with the patient for the rest of the night, and there were no further incidents with the patient. ([ECF No. 30-2 at 3](#), ¶ 7.) Ironically, rather than proving pretext, the undisputed commotion heard by Surface further supports the allegations of Haggerty's abuse of the patient and the ensuing corrective action, both by Surface and then Allanson.

Haggerty also contends that Allanson failed to conduct a reasonable investigation. The unrefuted evidence, however, is that after Allanson learned the patient had complained about Haggerty's care, Allanson interviewed Surface as the nurse assigned to that patient on the night in question. Surface gave a report about the incident, which Allanson concluded substantiated the patient's complaint. The investigation was informed by House Supervisor Nelms and Clinical Supervisor Railsback, both of whom independently interviewed the patient and relayed the complaint to Allanson.

12

And, based on the seriousness of Haggerty's conduct, including slamming a patient into her bed and yelling at her to the point that she was "scared to death," Allanson decided to terminate Haggerty's employment under St. Vincent policy. Even if there were flaws in St. Vincent's investigation, any alleged flaws do not raise a reasonable inference that St. Vincent lied about its reason for firing Haggerty. *See Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 732–33 (7th Cir. 2011) (concluding that "supposed flaws" in the employer's investigation did not raise an inference of discriminatory intent). As long as the employer honestly believes in its reasons for taking an adverse action, the plaintiff has not shown pretext. *See, e.g.*, *Formella*, 817 F.3d at 513. Haggerty has not come forward with evidence to raise a genuine issue of material fact as to pretext.

There is no genuine issue of any material fact, and St. Vincent has shown that it should be granted summary judgment on Haggerty's race discrimination claims under Title VII and § 1981.

### C. ADA Disability Discrimination

The ADA prohibits disability discrimination: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees. . . ." 42 U.S.C. § 12112(a). To establish a disability discrimination claim based on disparate treatment, a plaintiff must prove: (1) she was disabled; (2) she was qualified to perform essential functions with or without reasonable accommodation; and (3) her disability was the "but for" cause of an adverse employment action taken against her. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019); *Monroe v.*

*Ind. Dep't of Transp.*, 871 F.3d 495, 503–04 (7th Cir. 2017). To demonstrate that disability discrimination was the "but for" reason for an adverse action, a plaintiff can use an admission by the defendant or circumstantial evidence. *Monroe*, 871 F.3d at 504. Circumstantial evidence includes: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Monroe*, 871 F.3d at 504 (quoting *Bunn v. Khoury Enters.*, 753 F.3d 676, 684 (7th Cir. 2014)). The Seventh Circuit has "repeatedly held that '[s]uspicious timing alone rarely is sufficient to create a triable issue,' and on a motion for summary judgment, 'mere temporal proximity is not enough to establish a genuine issue of material fact.'" *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018) (quoting *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009)). Instead, a "plaintiff must ordinarily present other evidence that the employer's explanation . . . was pretext for [discrimination or] retaliation." *Id.* at 189 (quoting *Tibbs v. Admin. Office of the Ill. Cts.*, 860 F.3d 502, 505 (7th Cir. 2017)).

As St. Vincent argues, Haggerty has no direct evidence of disability discrimination and instead relies on circumstantial evidence. Specifically, Haggerty relies on "suspicious timing" between her having been on leave due to diabetes and her request for FMLA leave related to diabetes and her termination "within months." (ECF No. 30-1 at 15.) She also points to alleged comparators who were treated more favorably: Joe who left work early, the white Patient Care Technician who allegedly made the

14

doughnut comment to a patient, and Johnson who was allowed to complete her competencies online. Haggerty further argues that she can show pretext based on St. Vincent's failure to conduct a reasonable investigation.

A four-month gap between a protected activity and an adverse action is insufficient to show a causal connection between the two. *See,* *Longstreet v. Ill. Dep't of Corrs.*, 276 F.3d 379, 384 (7th Cir. 2002). Even if Haggerty had evidence of suspicious timing, as noted, suspicious timing alone is rarely enough to create a genuine issue of fact, *see, e.g.*, *Riley,* 909 F.3d at 188, and Haggerty has not presented other evidence from which a reasonable trier of fact could find that St. Vincent's stated reason for terminating her employment was a pretext for disability discrimination. As discussed in connection with Haggerty's race discrimination claim, Haggerty cannot use inadmissible hearsay to create a genuine issue of fact; her alleged comparators are not similarly situated to her; and even if the investigation had some flaws, the flaws do not raise a reasonable inference that St. Vincent's proffered reason for firing her was not honestly believed.

Haggerty has presented no evidence to raise a genuine issue as to whether her disability was a "but for" cause of her discharge. St. Vincent should be granted summary judgment on her disability discrimination claim.

### D. FMLA Retaliation

Haggerty also alleges that she was terminated in retaliation for taking FMLA leave. The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful

by" the FMLA. 29 U.S.C. § 2615(a)(2). The FMLA prohibits an employer from discriminating against an employee who has used FMLA leave. *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). To survive summary judgment on an FMLA retaliation claim, a plaintiff must present evidence that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse action; and (3) "the protected activity caused the adverse action." *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018).

Citing *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987 (7th Cir. 2010), Haggerty contends that she need only show that retaliation "was a substantial or motivating factor" in the decision to terminate her employment. In *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), the Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Id.* at 360. Whether brought under Title VII, the ADA or the FMLA, retaliation claims have been analyzed using the same standards. *See Freelain v. Vill. of Oak Park*, 888 F.3d 895, 900–01 (7th Cir. 2018). While the Seventh Circuit has not yet decided whether "but-for" causation applies in FMLA retaliation cases, *see Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014), Seventh Circuit cases more recent than *Goelzer* have applied the but-for standard. *See, e.g.*, *Riley*, 909 F.3d at 188. But even if Haggerty needs to show only that her protected conduct was a substantial or motivating factor in the termination decision, her retaliation claim cannot survive summary judgment.

While Haggerty can show that she took FMLA leave and requested intermittent FMLA leave and that her employment was subsequently terminated, she has

16

presented no evidence to raise a reasonable inference that her use or request of FMLA leave was any factor in, or caused, her job termination. As noted in connection with Haggerty's disability discrimination claim, the "suspicious timing" alone between her FMLA leave, FMLA request, and her termination is not only not suspicious in this case, but also is not enough without other evidence from which a reasonable trier of fact could find that St. Vincent's stated reason for terminating her employment was a pretext for retaliation. Her three alleged comparators—Joe who left work early; the white Patient Care Technician who allegedly made the doughnut comment; and Johnson, who Haggerty testified was off work due to a disability and then was allowed to complete her competencies online—are not similarly situated to Haggerty. Therefore, her alleged comparators raise no reasonable inference of discriminatory or retaliatory animus. Haggerty argues that St. Vincent failed to point to any performance deficiency as the basis for her termination, but patient abuse would amount to deficient performance. Haggerty attempts to find a discrepancy in the reason St. Vincent gave her for her termination—verbal, nonverbal, or physical abuse of patient ([ECF No. 33-3](#))—and the reason it gave to the Department of Workforce Development—poor job performance ([ECF No. 33-1 at 27](#)). But, again, verbal and patient abuse is a form of poor job performance. And even if patient abuse did not constitute poor job performance, no reasonable jury could infer from any difference in the explanation given to Haggerty and the explanation to Workforce Development, that St. Vincent was lying to cover up its alleged real reason, which was a discriminatory or retaliatory reason. Finally, Haggerty suggests that Allanson had a "negative attitude regarding her

17

approved intermittent FMLA leave" ([ECF No. 33 at 13](#)), yet she cites no evidentiary support for her claim. The undisputed evidence shows that she was granted FMLA leave whenever she sought leave. In any event, her unsupported assertion of Allanson's negative attitude to the contrary fails to create a triable issue of material fact.

The Court finds that Haggerty has presented insufficient evidence to permit a reasonable inference that her FMLA leave or request for FMLA leave was a factor in, let alone caused, the termination of her employment. Therefore, St. Vincent is entitled to summary judgment on her FMLA retaliation claim.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment ([ECF No. 29](#)) is **GRANTED**. The Joint Motion for Continuance of Trial and Pretrial Deadlines ([ECF No. 37](#)) is **DENIED AS MOOT**. Final judgment will be duly entered.

**SO ORDERED.**

Date: 6/13/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Zachary A. Ahonen
JACKSON LEWIS PC (Indianapolis)
zachary.ahonen@jacksonlewis.com

Paul J. Cummings
HENN HAWORTH CUMMINGS & PAGE
Paul.Cummings@HHCFirm.com

David M. Henn
HENN HAWORTH CUMMINGS & PAGE
david.henn@HHCFirm.com

Michael W. Padgett
JACKSON LEWIS PC (Indianapolis)
padgettm@jacksonlewis.com